and we agree the issues are the same and they can be argued together. So Mr. Moffitt, you may proceed when you are ready. Your Honor, this is Jeff Moffitt for the U.S. Department of Justice. I'm going to start with the case of the Churbaneffs and the Longs. Both cases are similar, although I believe the Churbaneffs case is the most egregious. Both of the cases focus on the jurisdiction of the Federal Court of Claims. In particular, 28 U.S.C. 1491a, which conveys the ability to render judgment upon any claim in the United States. And then under 28 U.S.C. 1346a1, as stated in Williams, the broad and unequivocal language authorizing suit for any tax erroneously collected. And then on top of that, Whitman v. Department of Transportation, which states jurisdiction for administrative decisions is presumed unless the intent is stated persuasively to deny jurisdiction. And as an alternative on the Churbaneffs case, jurisdiction exists in the Court of Claims for failure to release a lien. There is a... In the case of the Churbaneffs, unlike the Longs, they have paid the tax due. That is, through the enforcement of the liens, the full amount of the tax claim to be due has been paid, correct? In the Churbaneffs case, there was a bankruptcy, a Chapter 12. I understand, but I'm asking a simple question. They don't owe any tax liability. It's all been satisfied, right, in the Churbaneffs case? From 89 and earlier, yes. So what years are we involved with here? That was part of the years, is that from 89 through 85, that 23-year-old plus tax, the IRS was still collecting discharge penalties and interest. Okay, so it's all been paid. And the question, and you argue that it's a proper refund suit. Yes. Because it's all been paid. And also an illegal taxation, since it's already been discharged.  Okay. Okay, so your theory is they paid the tax, they could have brought suit for refund in the Court of Federal Claims. As I understand the government's response to that, they say you didn't make a refund claim, an administrative refund claim, before the suit was commenced. And your response to that is, well, an informal claim is sufficient under computer vision and the Supreme Court cases cited in there, correct? That's one of the ways. However, there's five ways for doing a refund. Well, let's stick with this one way. The theory was it was an informal claim. Exactly. But was there an informal claim that was filed before the commencement of this suit in September of 2006? Yes. How so? In the administrative, in the collection due process hearing, which was classified as an equivalent hearing, in my documentation I advised the revenue officer, Hoos, that they were collecting on tax that had been discharged, and they should refund that tax. And based on the informal claim, there's a couple other cases that state that even on the tax return itself, if you make a notation anyplace, you can, that that satisfies for refund procedures. Also, I know you were going down the informal route, but there's also a provide notice and then a more formalized complaint. And again, in the Terminix case... Later on, after the suit was filed. Right. Okay, but so where do we find in the record this description of what you say was an informal claim before the filing? But the October 2006 document was after the filing, right? Right. So that can't count as an informal claim. That's exactly the case. Okay, so what do we have before the... We go 186 days prior to the documentation that's attached to an equivalent hearing to Mr. Hoos. And in the document, I am conveying to Mr. Hoos that he is collecting improperly on tax that has already been discharged in bankruptcy. Okay, by that time, had the entire tax been paid or not? It had been discharged in bankruptcy, so in that case, yes. No, no, but forget about discharging bankruptcy. That's your theory. The government doesn't agree with that. The government then proceeded to levy and to collect the amount of the tax. Well, I disagree that... No, no, but just assume. I understand you disagree. I'm just trying to understand, at the time that you say this informal claim was filed, had all, in the government's view, had all the tax been paid at that point? No. No. According to the government, no. According to the government, no. So, was there an informal claim filed in between the time that the tax was fully paid and the commencement of the lawsuit? Yes. Okay, when was that? Where was that? There was, in the court record, there is documentation that shows that the prior representative in 2005 had filed a statement. But the tax hadn't, according to the government, the tax hadn't been paid. I'm just trying to focus you on one period of time here. In between the time that the government says the tax was paid and the filing of the lawsuit in September of 2006, was there any document in that period of time that could serve as an informal claim? I've just stated the answer is yes. What's the document? The document is the collection due process hearing request. But that happened before the tax was paid, according to the government. I'm just trying to find, I'm asking to focus on a limited period of time. The time between when the government says the tax was paid and the filing of the suit. Just stick with me. Okay. Just that period of time. Was there an informal claim during that period? The government only recently has conceded that the tax was in fact paid. As of May 2008, I received a lien release and Ms. Lyons stipulated that I can, that we can bring these into the record. It's a certificate of release of federal lien that I'd like to enter into the record given the stipulation. So what date does the government say the tax was paid? Not until after the suit was committed. My argument would be it was 1992 when the bankruptcy existed. I understand. But the government's theory is that it wasn't paid. The government in 2006 at the filing of the case said no, it's not been paid. I see. As of May 2008, it's saying it's now been paid. I see. Okay. I understand. Okay. So going through a, can I submit these? Yes, you may give them to the bailiff. Okay. Additionally, going through the informal claim, there's also a germane-ness doctrine that goes forward if there's a modification. If you file a claim and then there's a modification by the government that the government presumed or knew that you had filed a claim and was acting upon it, that's the germane-ness doctrine that I covered in my brief provides for refund suit. And then there's also the later filed where you give official notification that there's been a problem, and then you later file a suit, and then after the statute of limitations may have existed, you file what the IRS likes is in Form 843. And that was done, and that's also in the appendix here. So there's the refund part of this. Then the government was arguing we had to follow the Gordon theory of third-party claim and recognize that under Whitman, the federal courts have jurisdiction. But under the Gordon case, the ADA had submitted a brief and said, we think the federal court of claims has jurisdiction on this issue. And what do you know? The federal court of claims said, okay, we'll take up third-party levies. We don't necessarily like regular levies or wrongful levies, but we'll do third-party levies. Well, the Williams case, the Supreme Court case in Williams, where the majority opinion by Justice Ginsburg stated that the, I think it was, quoting that, the word taxpayer in 6511A, the provision governing administrative claims, cannot bear the weight the government puts on it. The provision's plain terms provide only a deadline for filing for administrative relief, not a limit on who may file. And so the attempt to say that the court of claims only has jurisdiction on third-party claims rather than any, I think Williams has set aside that and said anybody can bring a refund claim at all. Now, the next thing we have is the Elkhorn Supreme Court case. And if you recall the Elkhorn case, the case was lost primarily because the parties went through an administrative process on what turned out to be an illegal tax. The Supreme Court said, A, you don't have to follow the administrative processes on an illegal tax, and nor do you have to essentially fully pay. So in Elkhorn, if there's a tax that is being deemed illegal or improper, following the administrative processes is no longer necessary either. So the next thing we have, at least as far as the Chernobyfs, is the argument of Fowler that says, G, you have to make a full payment prior to getting a refund. If you follow that theory, then under the footnotes, there is a cite to Steele, which talks about segregable penalties and tax. And as this lien release talks about and also the brief talks about, we were dealing with segregable taxes and penalties. In this case, 940, 943, as well as some later 1040 taxes. And therefore, the court of claims had jurisdiction at least as to the 940 and 943 taxes as well as the penalties. So therefore, even under Fowler, which the government cites, the full payment theory doesn't hold there. The next thing we have is that the IRS, in their brief, said under IRC 7432, if there is a wrongful lien, that that would give the federal court of claims jurisdiction. One of the cases, one of the arguments that I made in the federal court of claims was a wrongful taking. If a lien is placed on a farmer's property, that stops his ability to obtain loans or anything like that. But you dropped that argument, did you not? The takings argument? I don't believe, I think I left the takings argument in, in the brief. I think I dropped everything else. I think there was, I think the takings I left in, the wrongful lien, the refund of statutory interest and offering compromise, and third-party levies and regular levies. I think those were the major parts. But if the takings case, if I'm correct and the takings is still in there, the fact that there was a lien, an improper lien, and what do you know, after this case has been filed in the federal circuit, court of appeals, we have a lien release. This tends to prove that in fact a lien existed and was encumbering their property and should have in itself given jurisdiction to the U.S. court of federal claims. The next thing we have is this, if we have to go through, besides a refund and a third-party refund, if we have to look for a money mandate to start looking at some of the abuse of discretion, there's some nice cases out there, one that I cited in my brief, called White Mountain. And White Mountain has now been followed up with Navajo. And my understanding of Navajo was that you don't have to find just a single money mandating action in the court that you're suing in, you can file a network of rules and statutes that provide for a money mandating action. And given that the Reform and Restructuring Act of 98 is added to by the Taxpayer Bill of Rights 2 and subsequently 3, there's still, at least on the books, a prohibition from the IRS improperly having liens on someone's property, improperly or wrongfully taking somebody's living, somebody's money. And in both the Churbanev's and the Locke's, the Churbanev's being in their 80s and the Locke's being 70, Mr. Locke's 70 and Mrs. Locke's 79, the money that's being taken is their Social Security benefits. And it's going through the Social Security departments based on just a letter from the IRS. So we think that the money mandating action of White Mountain and Navajo, and then the fact that on its face you can sue in district court, although I would argue under Whitman, you can sue in the federal court of claims too. But that's not necessarily what Navajo stood for, is that there just has to be an act that says a government official did something and there's a financial penalty. Based on that, if there's a financial penalty, then we can look at equity. And as I stated in my brief, there's several military cases, I believe one was Mendez. And in that case, if the federal court of claims and ultimately the federal circuit in other decisions, so we can look at the administrative processes and see if there was in fact an abuse of those processes. And on the offer and compromise program, as I pointed out in brief, the auditor of the IRS has stated that over 80 some percent of this congressionally created statute 7122, Internal Revenue Code 7122, which is designed to give people a chance, that the funding for that department has essentially been gutted. He uses a nicer term, but he also states that there's a major problem with this and if Congress says, we want to give the taxpayer a fair opportunity, and then at the same time we have Nina Olson, who's the head of the taxpayer advocate, which was designed to be kind of the watchdog of the IRS. And unfortunately, the only power she has is the power to complain to Congress when the IRS isn't doing what it's supposed to be doing. And as I brought out, that Nina Olson has been complaining for years. I think it's 10 or 15 years she's been talking about this offer and compromise program. And as I pointed out in brief, she makes a complaint about the IRS reducing the, not making proper adjustments on the ALE tables, which is the cost of living tables assigned by the government. And both her and Carlton Smith, who I cited, show that in 05 and 06, that the IRS is actually decreasing costs when we're having arguably a rising increase for these commodities. Returning to, let's try and concentrate on the jurisdictional issues and the basis on which these suits were dismissed, and we'll hear from the other side. Well, the jurisdiction itself, given that if in fact an offer and compromise can be reviewed, and it can be in the tax court and for abuse of discretion and also in the district court, absent persuasive intent by Congress to deny jurisdiction, the Court of Federal Claims had jurisdiction there too. So, in the Locke case, and this is Locke. How do they have jurisdiction? We're not talking about jurisdiction in the district court, where there may or may not be fewer problems. You still have the question of the refund, do you not? Well, I believe we get to the refund for Mrs. Locke by following the, if the offer and compromise can be reviewed. But no payments were made. Isn't that right? That's not accurate, Your Honor. There was in fact levies that were made as to her Social Security. Now, if in an offer and compromise doubt or innocent spouse request, which was made on behalf of Mrs. Locke, again, she's, this has dimension later Alzheimer's since 93, and she should have been deemed not responsible for any taxes from 93 prior. But that's not a matter of jurisdiction. Well, it can be. And if I say that there is in fact a violation of the IRS by failing to adhere to its own due process procedures of the offer and compromise by not following the proper Bureau and labor standards as comprised by the consumer expenditures report and the CPI reports, then I think that abuse of discretion with past Mr. Everson on how he created those tables, I think that might in itself create a Tucker Act jurisdiction being money mandated. But if the premise of an offer and a compromise could have existed for Mrs. Locke and her liability then reduced to zero, the fact that the, she was having money that was pulled out, that would then create a refund action and the interest on that itself, so there would be the subsequent payments that would have been applied would have been a refund since the money had still been coming out when we were, when I filed the suit and I'd given notice in a similar CDP hearing, similar to what the Churbinets had. So there was payment, there was notice, and if in fact she was determined retroactively to not have a liability, then there should be a refund of statutory interest. And as I cited in Citadel, you don't even have to follow the normal refund procedures for refund of statutory interest. Additionally, the IRS has a revenue ruling 25.6.1.10.2.9.1, which covers Internal Revenue Section 655, 6511H. And that covers financially disabled individuals. And in this revenue procedure, it says financial disability means being unable to manage financial affairs, Sub-A cause of disability, the inability must be due to medically determinable mental or physical impairment. It seems like Alzheimer's, as diagnosed by a doctor, should comply. And the required effect of disability, and then it goes on to be saying that it has to be longer than 12 months. So if she had, she had in fact been declared as an innocent spouse, then she could arguably have filed for refunds even prior to when their problems happened. She could have filed for refunds from, say, 93, when money wasn't necessarily due, at least as to her. And as in Williams, we can manufacture third-party status if we have to. And in this case, we can manufacture even a later refund, at least as to her, if it's necessary. But at least as far as the refund, if she didn't know what money had been paid, or taken out of her Social Security, and notice had been provided, and just as in the Chernivets, suit was started and then a later 843 was filed. This satisfies at least two or three of those informal methods that are allowed. Additionally, if we look at the exceptions in Fowler for less than full payment, arguably the penalties that were paid should have been enough to provide for a refund. Now, you're into your rebuttal time. Let's hear from the other side. Ms. Lyon. Thank you, Your Honor, and may it please the Court. My name is Kathleen Lyon, and I represent the United States in this case. Taxpayers make, in both cases, a very broad argument about the Court of Federal Claims jurisdiction, specifically inciting to Whitman and similar cases, that jurisdiction exists unless expressly revoked. And while that's true, the problem for taxpayers here is that the statutes that they bring their claims under do explicitly revoke jurisdiction in the Court of Federal Claims. Oh, not as to refund claims. I mean, the Court of Federal Claims does have jurisdiction over refund claims. And as I understand the situation in the Lox case, the taxes have not been paid. Correct. So the government's position is that under FLORA there's no jurisdiction over refunds. That's correct. In the case of the Sherbinettes, my understanding is that the taxes have been paid, correct? Yes, the balance is at zero. Okay, and when was that payment made? When was that liability satisfied? In looking in the Certificate of Assessments of Payments at Supplemental Appendix Page 63, the last levy that I saw was October 3, 2006, which was about a month after this case was filed. So at the time the case was filed, the tax had not been paid? Had not been fully paid. For any year? Correct, correct. The levies began in July 2006. And although Mr. Moffitt says that their informal request for a refund ran with their CDP request, that was filed in March 2006 before the levies started and certainly before the levies wound up paying off the entire balance. Well, what tax years are involved here? 85 and 89, is that right? 1985 and 1986 for the income taxes. Okay, so the tax due for neither 85 nor 86 had been paid by September 2006? Correct, that's correct. And I would also point out that although the taxpayers point to this lien release, which they've entered into the record now and I've only seen this morning, I would point out that if you look in the far left-hand column it says under kind of tax, it says 940 and 943, those are the employment taxes. Those are not the 1985 and 1986. Okay, well that was going to be my next question about the employment taxes. So when were the payments made for the employment taxes? That's not in the record because the only certificates of assessments and payments relate to the income taxes. Their claim for a refund on the employment taxes was not raised until December 2006. After the filing of the suit. Yes, three months after. And so it's not in the record and they hadn't even alleged in the complaint, because this wasn't in the complaint, that they had paid it off. And so I honestly don't know where that stands. And from looking at the lien release, it seems that there is still a balance due, but I'm not certain why the lien was released. I didn't have an opportunity to check into that. And so certainly with respect to LOC, again, they have not fully paid. On the offer and compromise issue, there isn't any statute that provides for review in the Court of Federal Claims here. The APA doesn't give the Court of Federal Claims jurisdiction to review agency action, and even if it did provide that generally, it expressly excludes review of agency actions that are committed to the agency's discretion, and the offer and compromise, the acceptance of an offer and compromise is a discretionary decision. It's important to note that with respect to both LOC and Churbanioff cases, the taxpayers could have had their offer and compromise reviewed, as well as the bankruptcy issue in the Churbanioff case could have been reviewed in tax court had they been properly raised in a collection due process proceeding. They were not because there was no timely request. And so in both cases, they received an equivalent hearing, and there is no recourse to tax court from that proceeding. And unless the Court has further questions for me, we'll rest in our briefs. Questions? Thank you, Ms. Lott or Ms. Lyon. Mr. Moffitt, you have a few minutes in response to Ms. Lyon's arguments. The argument that the employment taxes weren't raised in the equivalent hearing, I disagree with. There was a statement that I had made that all taxes prior to 1989 had been dismissed. All encompasses the 940, 943, as well as the 1040 income taxes. Additionally, if we look at the argument for the APA, the IRS is directly not under the Administrative Procedure Act. It parallels it, but it's not underneath it. Therefore, the claim that the Administrative Procedure Act doesn't provide for review, well, we're not really under the Administrative Procedure Act. We're under a parallel to it. And given that the military provides for reviews of abuse of discretion, the Court of Federal Claims should also. Additionally, at least as to the Churbaneffs, given that the bankruptcy released all income prior to 1989, and there is a penalty which is allowed for violating bankruptcy orders, again, using White Mountain and Navajo, this should provide the money mandating nexus that this Court may want to see to create jurisdiction. Although, based on Whitman, I don't think that's necessary. But it exists. All right. Okay. Any more questions for Mr. Moffitt? Any more questions? Okay. Thank you, Mr. Moffitt and Ms. Lyon. The case is taken under submission. All rise.